COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.

SUPERIOR COURT DEPARTMENT
C. A. No. 14 - 4470

| | | |
|---|---|---|
| JOHN DOE,<br>Plaintiff<br><br>v.<br><br>JAMIE ASHWORTH, EMILY PARKS and WESTWOOD SCHOOL COMMITTEE<br>Defendants | ) | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**INTRODUCTION**

1. This action against the WESTWOOD SCHOOL COMMITTEE, and the former Principal of Westwood High School, EMILY PARKS, arises out of incidents in which the plaintiff, while a student at the High School, was sexually assaulted and abused by JAMIE ASHWORTH, a teacher in that school, because the former Principal knew that ASHWORTH had a prior history of misconduct with students, but defendants took no action to protect students from her, pursuant to their legal obligations under Title IX, 20 U.S.C. § 1681.

**PARTIES**

2. Plaintiff is an individual who brings this action in the name JOHN DOE ("JOHN"), and is identified in a separate Affidavit which will be served upon the defendants.

3. Defendant JAMIE ASHWORTH ("ASHWORTH") has an usual place of residence at 290 Linden Street, Needham, Norfolk County, Massachusetts.

4. Defendant EMILY PARKS ("PARKS") has an usual place of residence at 15 Boston Avenue, Somerville, Middlesex County, Massachusetts.

5. Defendant WESTWOOD SCHOOL COMMITTEE ("WESTWOOD") is the school committee of the Town of Westwood, having an usual place of business at 220 Nahatan Street, Westwood, Norfolk County, Massachusetts.

**FACTS COMMON TO ALL COUNTS**

6. At all relevant times, JOHN was a student in Westwood school system, attending Westwood High School.

7. At all relevant times, ASHWORTH was a teacher at Westwood High School.

8. At all relevant times, PARKS was the Principal of Westwood High School.

9. At all relevant times, through its School Department, WESTWOOD was responsible for the administration of the Westwood Public School System, including Westwood High School, and employed PARKS and ASHWORTH.

10. At all relevant times, and in all actions described in this Complaint, WESTWOOD's employees, including, without limitation, Principal EMILY PARKS, and teacher JAMIE ASHWORTH, were acting under the color of law, under color of their authority as members of the Westwood Public Schools, and within the scope of their employment with WESTWOOD.

11. JOHN attended Westwood High School from 2005 to 2009.

12. During the time he was a student, JOHN suffered from *epidermolysis bullosa*, a painful dermal blister disease, which required him to use a wheelchair in class.

13. From the time he was student in kindergarten, JOHN had a 504 Education Plan.

14. In addition, during his sophomore year, JOHN was diagnosed with Obsessive Compulsive Disorder, for which the High School revised his 504 Education Plan.

15. Subsequently, JOHN was also diagnosed with Crohn's disease and colitis, and

Asperger Syndrome.

16. Individuals with Asperger Syndrome have difficulty primarily in three areas: social interactions, engaging in repetitive behaviors, and rigidity in thinking.

17. Because of his physical condition, JOHN began to use Percocet to numb the pain in his feet.

18. ASHWORTH was JOHN's Spanish teacher during his sophomore year, and during that time she became aware of both his physical, and his psychological, limitations and disabilities.

19. During his sophomore year, ASHWORTH groomed JOHN, by giving him special attention and inflating his class grade in Spanish.

20. In his junior year, ASHWORTH arranged to become JOHN's study advisor.

21. Although JOHN frequently failed to follow through on his study obligations, ASHWORTH never took any action to discipline JOHN.

22. During his junior year, ASHWORTH increased her attention to JOHN, spending time with him both in and out of classroom situations.

23. ASHWORTH told JOHN he was not a student, but rather he was a "peer," like one of the teachers, and she gave him a copy of the 2006-2007 "Westwood Public Schools Directory" which listed the names, positions, home addresses, and private telephone numbers, of all of the educational personnel in Westwood.

24. ASHWORTH started supplying JOHN with oxycodone, valium, and atavan for his physical pains.

25. ASHWORTH requested JOHN to repay her for providing medications to him, by allowing her to perform oral sex on him.

26. On one occasion, ASHWORTH performed oral sex on JOHN, without his consent, while he was sitting in his wheelchair, in the Spanish teachers' conference room at the High School.

27. The relationship between ASHWORTH and JOHN did not go unnoticed at the High School.

28. Several teachers spoke to JOHN, inquiring about the nature of their relationship.

29. One teacher said to him: "JOHN, you are pretty chummy with Ms. Ashworth."

30. The Vice Principal, Stephen Dexter, Jr., told JOHN that he shouldn't speak with ASHWORTH, even though he knew that she was his study advisor.

31. Many teachers also spoke with ASHWORTH about her relationship with JOHN.

32. At one point, JOHN's parents complained to PARKS that ASHWORTH was constantly calling and texting JOHN, at all hours of the day, and late at night.

33. Despite being told by JOHN's parents that they had records of ASHWORTH's calls to their son, defendant PARKS failed to take any action to protect JOHN from ASHWORTH.

34. Even though she told JOHN that she had frequently seen him leaving the school with ASHWORTH, after regular school hours, PARKS took no action to protect JOHN.

35. Instead of taking any action against ASHWORTH, defendant PARKS called JOHN's parents, and told them to have their son stop calling ASHWORTH.

36. During his senior year, JOHN suffered a total mental breakdown, and was hospitalized. He did not complete his studies, but he was nonetheless graduated from Westwood High School in 2009.

37. JOHN subsequently attempted to commit suicide, and has since required several additional hospitalizations.

38. On May 2, 2011, JOHN was at ASHWORTH's home when she requested him to let her engage in oral sex with him. When JOHN refused, ASHWORTH called the police, and claimed that JOHN had stolen her oxycodone pills, and had assaulted her in the process.

39. In her statement to the police, ASHWORTH stated that she and JOHN had been involved in "a year long physical relationship, which ended approximately one year ago," indicating thereby that the relationship had commenced in 2009, while he was still attending Westwood High School. A copy of that portion of Needham Police Department Report #11-0573 is annexed, marked "A."

40. As a result of ASHWORTH's complaint, JOHN was arrested and charged with domestic assault and battery, and unarmed robbery, which charges were subsequently dismissed.

41. It was not until his involvement in this legal process that JOHN understood, for the first time, that ASHWORTH had sexually abused him, while he was a child, and that he had been harmed, both by her conduct, and by the failure of ASHWORTH's supervisors, defendants PARKS and WESTWOOD, to protect him from ASHWORTH.

42. The medical literature relating to the sexual abuse of minor males by adult females establishes that young males frequently do not view such sexual contacts to be abusive, due to peer and societal attitudes, and the way in which such encounters are portrayed in literature, television and movies.

43. Because of this, it was objectively reasonable for a person in JOHN's circumstances not to recognize that he was harmed by defendant ASHWORTH's conduct until she attempted to prosecute him criminally for refusing her sexual demands.

44. At some point, defendants PARKS and WESTWOOD asked ASHWORTH to leave Westwood High School, but did so under circumstances in which there was no public acknowledgment of ASHWORTH's misconduct with JOHN, and in such a way that ASHWORTH was able to obtain continuing employment as a teacher at two other educational institutions.

45. ASHWORTH's subsequent employers were never told about her sexual misconduct at Westwood High School by defendants PARKS and WESTWOOD.

46. ASHWORTH engaged in sexual activity with other male students at Westwood High School.

47. Plaintiff is informed and believes that ASHWORTH engaged in sexual activity in her subsequent employment as a teacher at another educational institution.

48. The 2008 edition of the Westwood High School Student Handbook contains the applicable Harassment and Discrimination Policy ("the Policy").

49. The Policy states: "*The Westwood School Committee is committed to maintaining an educational atmosphere in which every student can pursue scholastic achievement and personal fulfillment. All harassment is considered destructive behavior which interferes with the educational process and shall not be tolerated.*"

50. The Policy provides for the reporting of any sexual harassment to an "Advocate."

51. None of the teachers or administrators at Westwood High School made any reports to an Advocate regarding ASHWORTH's conduct with JOHN, or any other student.

52. The Policy provides that any harassment of a student by a school department employee "*shall be reported* [in accordance with G.L. c. 119, §51A] *to the Principal or the Superintendent of Schools.*"

53. None of the teachers or administrators at Westwood High School made any reports to the Principal regarding ASHWORTH's conduct with JOHN, or any other student.

54. None of the teachers or administrators, including the Principal, at Westwood High School, made any reports to the Superintendent of Schools regarding ASHWORTH's conduct with JOHN, or any other student.

55. The Policy lists the name of the District Title IX Coordinator.

56. None of the teachers or administrators, including the Principal, at Westwood High School made any reports to the District Title IX Coordinator regarding ASHWORTH's conduct with JOHN, or any other student.

57. The Policy also describes the Memorandum of Understanding between the Westwood Public Schools and the Westwood Police Department ("the Memo").

58. The Memo provides for the reporting to the Westwood Police Department Designated Liaison of any incident involving a school staff person:

   a. if "*the activity poses a serious and imminent threat to the safety*" of a student;

   b. relating to "*possession, use, or distribution of . . . any controlled substance*;"

   c. an "*incident involving the . . . sexual abuse of a child.*"

59. None of the teachers or administrators, including the Principal, at Westwood High School made any reports to the Westwood Police Department Designated Liaison regarding ASHWORTH's conduct with JOHN, or any other student.

60. Neither defendant PARKS, nor defendant WESTWOOD, took any action against

ASHWORTH, and no investigation into her conduct as a teacher at Westwood High School was ever conducted.

61. In her capacity as Principal of Westwood High School, PARKS was duty bound to investigate any reports of inappropriate sexual activity between a teacher and a student.

62. PARKS recklessly failed to investigate the inappropriate relationship reported to her by JOHN's parents, and failed to take adequate steps to insure the safety of students within her charge.

63. Through recklessly failing to investigate, PARKS tolerated, and indeed promoted by her inactivity, an atmosphere of fear and sexual harassment to which plaintiff, and others, were subjected by ASHWORTH.

64. Plaintiff was a victim of sexual violence on account of his gender.

65. Had defendant PARKS properly supervised, disciplined and discharged ASHWORTH, the assaults upon the plaintiff and others at the school would not have occurred.

66. As a result of the deliberate indifference of defendant PARKS, the plaintiff was denied equal protection of the law.

67. These acts and omissions by WESTWOOD's employees and supervisory personnel, pursuant to policies, practices and customs which are well known and widely practiced, constitute acts under the color of law, within the meaning of 42 U.S.C. §1983, which have deprived plaintiff of his statutory and constitutional rights and privileges including, without limitation, his rights under Part 2, Chapter V, Section II of the Constitution or Form of Government for the Commonwealth of

Massachusetts, which guarantees a fundamental education to all, and also under G.L. c. 69 § 1, to an education which "*provides the conditions of all pupils to engage fully in learning . . . without threats to their sense of security or self-esteem.*"

68. Defendant WESTWOOD, and Westwood High School, constitute an educational institution, as defined by 20 U.S.C. §1681(c), Title IX, Education Amendments of 1972 (hereinafter "Title IX") which receives federal financial assistance, through a variety of educational programs. As a result, even if it were not obliged to do so under state law, defendant WESTWOOD was required to adopt and implement sexual harassment policies under Title IX.

69. Plaintiff suffered extraordinary harm due to the repeated sexually harassing conduct of ASHWORTH, and the sexually hostile environment created by her at Westwood High School, of which defendants PARKS and WESTWOOD had actual knowledge and failed to correct.

70. Defendants PARKS and WESTWOOD failed to take appropriate actions to protect plaintiff and others from sexual harassment within the Westwood school system, after having actual notice of the harassment, all in violation of Title IX and in violation of rights guaranteed by the United States and Massachusetts constitutions, statutes, laws and regulations.

71. Defendants WESTWOOD and PARKS actually knew about the specific misconduct and sexual harassment committed by ASHWORTH, and were deliberately indifferent to this conduct, all to plaintiff's harm and continuing exposure to a sexually hostile educational environment.

72. Alternatively, WESTWOOD and PARKS should have been aware of the misconduct

and sexual harassment committed by ASHWORTH due to its pervasive nature, and ASHWORTH's open and notorious acts.

73. Defendants WESTWOOD and PARKS, through their actions and inactions described herein, and through a pattern of deliberate indifference, created and permitted *quid pro quo* sexual harassment, and a severe, pervasive and persistent sexually hostile educational environment in violation of Title IX of the Education Amendments of 1972.

74. ASHWORTH's sexually harassing conduct and physical touching were not welcomed by plaintiff, and were not made with the plaintiff's permission.

75. Defendants violated the requirements of Title IX by the following acts and omissions, all of which were conducted, and/or failed to be conducted, in reckless and deliberate indifference to the rights of plaintiff guaranteed by Title IX, and in reckless and deliberate indifference to the risk of harm posed to plaintiff:

   a. allowing ASHWORTH's employment to continue without investigation after plaintiff's parents complained of her conduct;

   b. failing to communicate to students and their parents the identity of the Title IX coordinator, as required by 34 C.F.R. Sect. 106.8(a);

   c. failing to adopt and publish appropriate grievance procedures for the prompt and equitable resolution of sexual harassment and sex discrimination complaints in violation of Title IX;

   d. failing to disseminate an appropriate policy against sexual harassment;

   e. discouraging students and their parents from complaining about the sexual harassment within the Westwood school system;

f.  actively disregarding known sexual harassment of which defendants knew based upon complaints of students and staff at Westwood High School

g.  failing to take immediate and appropriate corrective actions to remedy the known harassment by ASHWORTH;

h.  taking steps known or which should have been known to be ineffectual in eliminating defendant ASHWORTH's sexual harassment of students;

i.  knowingly permitting ASHWORTH to put her hands on the bodies of plaintiff and other students, under inappropriate circumstances;

j.  failing to conduct a reasonably diligent inquiry regarding ASHWORTH's sexually harassing conduct so as to end the harassment;

k.  failing to make a prompt, thorough and impartial inquiry into students' and staffs' allegations of sexual harassment by ASHWORTH;

l.  failing to take appropriate steps to prevent harassment from occurring within the Westwood school system;

m.  completely failing to supervise ASHWORTH when defendants knew of her inappropriate contact with students and inappropriate behavior in the classroom;

n.  repeatedly giving "satisfactory" reviews to ASHWORTH regarding her interactions with students despite having actual knowledge of repeated sexual harassment;

o.  failing to promptly report acts of child abuse to the Massachusetts Department of Children and Families, as required by G.L.c. 119, § 51A, when there was reasonable cause to do so;

p. knowingly failing to establish an atmosphere throughout the school in which children will feel safe, secure and happy and, in addition, have maximum opportunity to learn;

q. failing to have adult to student sexual harassment training for its staff, thus exhibiting deliberate indifference to this condition at its schools;

r. failing to provide appropriate supervision, mentoring, and/or training to ASHWORTH;

s. failing to have a zero tolerance policy for sexual harassment in the Westwood school system.

76. Defendants WESTWOOD and PARKS' actions altered the conditions of plaintiff's educational environment.

77. For the reasons outlined above and below, defendants were deliberately indifferent to a known risk of sexual harassment and as a public or governmental entity were responsible for a "state-created danger" all for which plaintiff states a claim against defendants for violation of his civil rights pursuant to 42 U.S.C.A. § 1983.

78. As a direct and proximate result of defendants' conduct described herein, plaintiff, as a minor child was caused to suffer embarrassment, humiliation, emotional injuries and was inappropriately touched by ASHWORTH, which was not invited or welcome, and has suffered pain in the mind, protracted impairment of emotional health and has incurred and/or will likely incur medical expenses for treatment in the future and legal fees and expenses and has otherwise been damaged.

**COUNT 1**

79. Plaintiff realleges and incorporates herein the allegations contained in each and

every other paragraph of this Complaint.

80. Defendant WESTWOOD SCHOOL COMMITTEE violated the plaintiff's rights as a citizen of the United States pursuant to 42 U.S.C. §1983 and §1988.

**COUNT 2**

81. Plaintiff realleges and incorporates herein the allegations contained in each and every other paragraph of this Complaint.

82. Defendant PARKS violated the plaintiff's rights as a resident of the United States pursuant to 42 U.S.C. §1983 and §1988 by depriving him of the Constitutional rights secured for him by the Fourteenth Amendment of the United States Constitution.

**COUNT 3**

83. Plaintiff realleges and incorporates herein the allegations contained in each and every other paragraph of this Complaint.

84. Defendant WESTWOOD SCHOOL COMMITTEE violated the plaintiff's rights as a resident of the United States under 20 U.S.C. §1681-1686.

**COUNT 4**

85. Plaintiff realleges and incorporates herein the allegations contained in each and every other paragraph of this Complaint.

86. Defendant PARKS violated the plaintiff's rights as a resident of the United States pursuant to 42 U.S.C. §1983 and §1988 by depriving him of the federal statutory rights secured for him by Title IX, 20 U.S.C. § 1681.

**COUNT 5**

87. Plaintiff realleges and incorporates herein the allegations contained in each and every other paragraph of this Complaint.

88. Defendant ASHWORTH interfered with plaintiff's rights under the constitution and laws of the United States, and under the constitution and laws of the Commonwealth of Massachusetts, in accordance with G.L. c. 12, §11H and I.

**COUNT 6**

89. Plaintiff realleges and incorporates herein the allegations contained in each and every other paragraph of this Complaint.

90. Defendant ASHWORTH sexually assaulted, battered and raped the plaintiff.

**COUNT 7**

91. Plaintiff realleges and incorporates herein the allegations contained in each and every other paragraph of this Complaint.

92. Defendant ASHWORTH intentionally inflicted emotional distress upon the plaintiff.

**COUNT 8**

93. Plaintiff realleges and incorporates herein the allegations contained in each and every other paragraph of this Complaint.

94. Defendant ASHWORTH negligently inflicted emotional distress upon the plaintiff.

**RELIEF REQUESTED**

WHEREFORE, plaintiff demands judgment against the defendants, on each Count, in an amount to be determined by a jury, as compensatory damages, and as punitive damages where appropriate, plus costs, interest, and attorney's fees.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS.**

By his Attorneys,

________________________________
GLEN HANNINGTON, ESQUIRE
BBO # 635925
Law Office of Glen Hannington
785 Washington Street, Suite 11B
Canton, MA 02021
(781) 821-2828 / *glenhannington@aol.com*

________________________________
CARMEN L. DURSO, ESQUIRE
BBO # 139340
Law Office of Carmen L. Durso
175 Federal Street, Suite 1425
Boston, MA 02110-2287
617-728-9123 / *carmen@dursolaw.net*
April 30, 2014

# NEEDHAM POLICE DEPARTMENT

99 School Street
Needham, MA

## INCIDENT REPORT CONTINUATION

| Unit# | 574 | Date | 5/2/11 | Time | 1734 | Day of Week | Monday | IR# | 11-0573 cont |
|---|---|---|---|---|---|---|---|---|---|
| Addr of Occr | 290 Linden St | | | | | Reporting Officer | Evans | | |

**NARRATIVE:** On Monday, 5/2/11, at approximately 1734 hours, I, Ofc. Evans (N574), was dispatched to 290 Linden St for a report of a person on scene at the residence stealing prescription medication (see Ofc. Burke's IR# 11-0573). Multiple units responded to the area.

Dispatch updated responding units that the suspect had fled in a grey Honda Fit MA[redacted], on High Rock St heading towards Chestnut St.

Ofc. Burke effected a stop of the suspect on Chestnut St. I continued to 290 Linden St. Upon arrival, I was met outside the residence by RP Jamie Ashworth. Jamie was on the phone with Needham PD and appeared visibly upset. I asked Jamie what was going on. Jamie stated that [redacted] had just left her house after stealing her prescription Oxycodone. I asked Jamie what relationship she has with [redacted]. Jamie stated that she and [redacted] previously had a year long physical relationship, which ended approximately one year ago. Jamie stated that [redacted] has problems with drugs and knows that Jamie has prescription drugs in the house. Jamie stated that [redacted] was recently thrown out of rehab.

"A"